Your honors, thank you for the privilege and honor to be able to argue this case this morning on this afternoon on behalf of Taryn Christian, my client. In the McCoy case, Judge Ginsburg made a point of quoting Larry English, McCoy's lawyer, and McCoy told the jury that he admitted that McCoy was the killer and that he would take that burden off of the prosecution. In this case, Anthony Rankin did a similar thing when he got onto the floor of the courtroom and enacted how my client stabbed the victim in this case. The reason why he did that, though, was not because of anything in his control at the time. He wanted to get the two people waiting in the hallway to testify to confessions made by Mr. Burkhart that he was, in fact, the murderer, but he was not allowed to do that because under the chamber's analysis, the court found that there was insufficient corroboration. A similar finding was made by the Hawaii Supreme Court, and after a petition in this case was granted on a chamber's analysis, this court reversed the district court and sent our client back to prison, citing lack of corroboration on those confessions. Counsel, even if we were to put aside the question of McCoy never being held retroactive by the Supreme Court and are not being compelled to find it retroactive, even if we were to put that to the Basically, making an argument about whether or not there was actual innocence, as opposed to this case, where regardless of the artfulness of Mr. Rankin's argument, he was clearly arguing in the alternative that government hasn't proven beyond a reasonable doubt that my client is the one who stabbed the victim, but if you don't agree with me, why don't you look at self-defense, too? How is that similar enough, even getting beyond the procedural issue? It's similar enough because Mr. Rankin never would have admitted the actus reis over his client's objection if he hadn't been forced to. He was forced to in McCoy because of the outrageous and very overwhelming nature of the evidence in that case. It didn't make it right, but I think that that was the hand that he was dealt with. In this case, Mr. Rankin was dealt with a continuing perpetual lie that has faced every court that has analyzed chambers in this case. They all said right down the line that there was no corroboration because Burkhart was never that. On July 17, 1995, three days after the murder, he in fact put his initials on a photograph that said that Burkhart was the one he saw, and this court was told exactly the opposite when this case was heard by the panel 10 years ago. It was told. But counsel, on that may give you a basis for filing another Rule 40 in the circuit court, but how does that bring you within McCoy? I mean, I presume in this case the reason Mr. Rankin argued self-defense was because the court gave a self-defense instruction to the jury, right? Yes, Judge. You know what the best way to get to that point is, is to read from the findings of the habeas court. Judge Kobayashi wrote this. At the outset of the trial, the defense's strategy was to establish the petitioner did not kill Kavakam. By the time of closing arguments, however, trial counsel apparently altered the defense's strategy and presented self-defense and extreme emotional disturbance as alternative arguments. The court finds that under the circumstances of the trial, this decision was within the wide range of professional competent assistance. As discussed supra, Burkhart invoked the Fifth Amendment when called as a defense witness, and the trial court excluded the witnesses who would have testified that Burkhart confessed to the killing of Kabam. These events certainly hurt the defense's ability to establish that another person, namely Burkhart, killed Kavakam. Trial counsel's strategic decision to argue self-defense and extreme emotional disturbance was objectively reasonable under the circumstances. That would never have happened if we had been told the truth about that identification. That never would have happened. That's why they're so integrally entwined. But for the fact that we had a fraud committed upon that court, the court, the habeas court, this court, there was a female judge during oral argument that said, Mr. Minotoya, are you telling us in uncertain terms that no one else identified Mr. Burkhart? Yes. And based upon that representation, I would point you to the published decision that found eyewitnesses linked Burkhart, no eyewitnesses linked Burkhart to the scene of the crime, page 262, and two witnesses placed Burkhart at a completely different location at the time of the stabbing. Counsel, you did make, you did make a, I'm sorry, Judge Beyer, go ahead. Mr. Montefiore, you're confusing me. Are you arguing that McCoy is the basis for your plea? Or are you saying actual innocence is your basis for the plea? Both, Judge. Both. Both. And I will tell you why. This, it's important to realize and understand that Tarrant Christian's Rule 60 D1 independent action invoking McCoy is not a second or a successive abuse. You know, when Mr. Christian filed his independent action in district court, he also filed a valid Rule 60 B6 motion asking the district court to address its irreconcilable rulings on core constitutional facts. And one of those core constitutional facts was a order by the district court, an order by Judge Ezra, which mandated that that identification be turned over counsel. It never was. Now, I understand that this case is different procedurally, but the fact that this, that this identification has been suppressed and its impact on McCoy and forcing Rankin to adopt a decision that never would have been adopted had they been truthful at the outset is at the core of this case. Let me stop you there. Yes, Judge. Indicate that the petitioner did not make a claim of actual innocence and then his style as a 60 D motion was simply on McCoy. Are you telling me now that there was an actual innocence claim in your 60 D motion? Not in this motion, Judge. Yes, not in this motion. Yes. Talk about McCoy. Well, I will talk about McCoy, Judge, and the fact that this decision was guided by that deception. But I will go on. I will go on and I will argue that most certainly if an application to file a successive habeas petition was the proper legal vehicle to request the district court to reopen the habeas corpus to address a grave miscarriage of justice resulting from the district court's 2008 judgment, Mr. Christian would have filed such an application. But unfortunately, in this case, Judge, this, this was incorrectly, and I would argue unfairly, re-characterized as a successive application when in fact it was still and still is a rule, a valid rule 60 D1 application. Castro, the United States Supreme Court in Castro held that successive when in a motion for habeas cases is designated as a successive petition, then the courts have to determine whether or not the federal courts have stretched jurisdiction by limiting the words of the habeas corpus statute too far. But it wasn't a 60 D motion because it didn't point any error in the process of the trial judge. But you, but it's a, it's a SOS, a second and successive because it seeks to annul a state court proceeding based on a federal rule, which came up afterwards, that is McCoy and McCoy is not applicable. But that's the end of the matter, isn't it? No, I don't believe so, Judge, because by not allowing this court to proceed as a rule 60 D, then this, this court would be at that point somehow justifying or allowing this. What error in process did the trial court make? It did not allow the confessions in when they should have been, but that was done not because of an error of the court. It was done because of duplicity of the state. And this, this, this duplicity was the same duplicity judge that was allowed to, to cause this court to falsely rule that there was insufficient corroboration under chambers. That, that I would argue should never be allowed to stand. And ever since 2011, Mr. Christian has been seeking an adjudication on the merits of that that decision to keep that evidence from Mr. Christian impacted his decision to go forward and, and, and admit over his objection that he stabbed him. The counsel, your, your time has expired, but we will give you some rebuttal time. Thank you, Judge. All right, Mr. Roast, whenever you're ready. Thank you, Your Honor. May it please the court, Richard B. Ross for responding. Um, I, I think Judge Bea's questions, uh, comment was, was correct. Uh, this is not a Rule 60 motion that is a second attempt to file a second habeas petition. And this, the district court's order referring this matter to this court, uh, we would completely concur with Judge Ezra's reasoning there and how under Gonzalez versus Crosby and this court's ruling in the United States versus Washington, uh, a second, uh, a Rule 60 motion is really a second or successive habeas action when it asserts a federal basis for relief from a state judgment or conviction. Here they've asserted federal basis, which is McCoy. That puts it under the rubric of a second or successive habeas action. So they have to meet the standard under 28 U.S.C. Section 2344. And there, there's two questions under that as the court's alluded to. One, does McCoy versus Louisiana apply to the facts in this case? And two, is McCoy, has McCoy been made retroactive on collateral review by the Supreme Court? The answer to both those questions is definitively no. Uh, McCoy doesn't govern this case. Anthony Rankin never conceded the petitioner was guilty. He made it extremely clear what he was doing was first arguing Mr. Christian didn't stab the victim, Dilmer Cavachang. He argued that extensively, he made numerous fact-based arguments trying to show there was reasonable doubt as to whether Christian committed the stabbing. For example, saying there was no blood on Christian's gloves, saying the victim's girlfriend acted suspiciously, uh, saying that there were statements on the recorded conversation where Christian denied committing the stabbing. So he clearly made those arguments. Then he moved on and told the jury explicitly, now I'm going to make an alternative argument. I don't know what happened, but I'm going to argue there might be reasonable doubt as to self-defense. He went down that path and made those arguments, but it was always done in the explicit alternative. And while there's not a lot of case law on this, there is some. Uh, we cited the James versus Florida Department of the Middle District of Florida in 2019, which said making an alternative argument is not a concession of guilt. And there's, I'm not aware of any authority to the contrary. And certainly petitioner has cited none. Uh, petitioner has raised judicial estoppel on this point in their motion for judicial notice. They've argued that at some point, uh, respondent took the position that ranking did in fact concede Christian's guilt. That's not true. Respondent has never at any point, taking that position, uh, taking that position would have essentially been given petition or a lay down hand for ineffective assistance of counsel, because this court decided way back in 1991 in United States versus Swanson that a concession of guilt is ineffective assistance of counsel while the Supreme court in McCoy, uh, when it didn't go under the rubric of ineffective assistance, the ninth circuit already already established that So if, if respondent had ever come in and said, yeah, Anthony Rankin admitted Christian did it, Christian would have gotten habeas relief on ineffective assistance of counsel. Uh, the other point, uh, part of the McCoy equation is whether or not there was an objection, an express objection by the client to what his attorney was going to do here. The only Christian written, uh, prior to the initial trial. And that doesn't show that Christian objected to what Rankin actually argued, arguing self-defense in the alternative. It showed that Rankin wanted to abandon the argument that Christian did not commit the stabbing and focus on self-defense, but Christian rejected doing that. That's what the letter says. But Rankin did argue that Christian didn't do it. He, he applied the third man defense that Christian wanted. So the letter doesn't show an express objection to arguing self-defense in the alternative. And therefore McCoy is not satisfied on that point either, uh, as to whether or not McCoy is retroactive Supreme court cleared in clearly didn't make McCoy retroactive in McCoy. McCoy is a direct review of the Louisiana Supreme court. It doesn't get into retroactivity on collateral review. There've been a few citations by the Supreme court to McCoy subsequently, but none of them touched on collateral review retroactivity either. Uh, petitioner's only real argument on this is that McCoy is a watershed rule under TV lane and respondent would submit. That's not the case. Uh, again, there's not a huge amount of law on this point. This court could have answered that question recently in the United States versus McGee case, but chose not to, uh, in an unpublished very brief order. Uh, but what courts, I agree with you that self-defense is not the same as admitting guilt, but what it does do, it is a complete departure from the, the defendant's position that he didn't do it. Um, what we used to call down justice, the Saudi defense, some of the different dude did it, right? Uh, you can't very well argue, um, I didn't do it, but if I didn't do it, it was self-defense. Those factual issues are so in, in conflict. Why shouldn't, why shouldn't we take McCoy as saying that when the defendant uh, to anything other than actual innocence and counsel puts forward a factual scenario, which debilitates the defense of actual innocence, then McCoy applies. Well, I think that would be an expansion of what McCoy actually says, which is, it, it is framed in terms of concession of guilt, as opposed to concession of facts. Uh, McCoy does take pains to point out that the arguments that counsel is going to advance are still the, the lawyer's call, not, not the client that quotes the Gonzalez versus United States case on that point in McCoy. So I don't think that, um, McCoy says you, you can't make a self-defense argument over the client's objection. Although here, I think, I think some of the disconnect is that McCoy, uh, if, if, if Anthony Rankin had said, yes, he stabbed him, but it was self-defense, then you might have a McCoy claim. But Rankin didn't say that. He said, well, I don't know whether he did it or not. Here's a bunch of reasons for you to find that he didn't commit the stabbing. But if you do find he committed the stabbing, then let's talk about whether it was self-defense. So there's not a, there's not an explicit con, uh, concession that, that, that the stabbing was committed by Christian. And I think that's the difference from McCoy. Uh, just going back to the retroactivity very quickly, uh, the cases that have addressed the question of whether McCoy is a watershed rule under Teague v. Lane, as far as I've seen, have been unanimous that it's not a watershed rule, uh, and it's not entitled to retroactivity. Uh, Johnson versus Ryan out of the District of Arizona last year was one of those cases. And, you know, the Supreme Court in Tyler v. Kane 20 years ago noted that it, it was unlikely there were any watershed rules that had yet to emerge at that point. And it hasn't found any watershed rules since Tyler. And there's nothing to indicate that McCoy is going to be one of those watershed rules. Uh, counsel did talk about the Philip Schmidt, the witness who are, who said, who testified in the district court here in Hawaii that he had identified James Burkhart. This issue was discussed fully, uh, in front of Judge Ezra in 2015 on, uh, petitioner's motion, which was alleging fraud on the court. And Judge Ezra went through this meticulously and noted that petitioner was aware that Schmidt picked someone other than Christian out of a photo lineup during the initial trial in 1997. So that issue was, was dealt with. Petitioner did not try to appeal Judge Ezra's ruling in rejecting the motion to reopen based on fraud. He didn't attempt to appeal that 2015 ruling, I believe, until 2019. And then this court found that was untimely. So that, that issue was decided by Judge Ezra. Uh, even if the Schmidt issue is somehow relevant, it, it, it has nothing to do with McCoy. I, I hear counsel trying to sort of bootstrap this argument by saying, well, Anthony Rankin got railroaded into having to make a bad argument. That's not what McCoy stands for. Uh, there's, there's just no, no basis to find that link to this, you know, in, in his briefing response, petitioner has accused me of committing a Brady violation by not bringing up the Philip Schmidt issue to this court. I just have to very briefly say, I find that completely scurrilous. Uh, it was briefed in 2015 in front of Judge Ezra and it's unrelated to the issue that this court specifically told me to brief, which is whether or not McCoy applies. So there's, there's been no attempt to railroad Mr. Christian here. I, it's, it's, it's simple. McCoy doesn't apply and he's not entitled to file a second or successive habeas, uh, application. Thank you very much. Unless there are any questions. All right. Thank you. Um, Mr. Montefiore, we'll give you two minutes for rebuttal. Arguing in the alternative that, um, Mr. Christian's rule 60 D one independent action is subject to the requirements of the AEPDA. I would argue that Mr. Christian has made a prima facie showing that McCoy does apply. The facts in Mr. Christian's case clearly demonstrate the trial counsel gambled his client's fate by overriding his expressed desire not to admit, not to tell the jury that he stabbed Kavakam. The district court acknowledged this in 2008, but defended counsel's conduct on a Strickland test and his misguided premise that there was not strong evidence to corroborate the Burkhart confessions. McCoy does articulate a new rule of I would point out to the court that under Teague versus Lane, the second exception is applicable because that is new rule, which applies retroactively. If it requires the observance of those procedures that are implicit in the concept, the concept of ordered litter liberty in Spearman, this court said that the, uh, the petitioner has a light showing, uh, a light burden, um, a sufficient of a possible merit to warrant a fuller exploration by the district court would warrant sending this case back. Importantly, Mr. Christian is not required to show at this gatekeeping stage that the rule announced in McCoy is a watershed rule of criminal procedure that applies retroactively on collateral review. I don't believe at this point, and I would argue to the court that finding that McCoy is a watershed rule of criminal procedure is necessary at this time. Your honors, this is the one thing that just needs to be reconciled. I would argue to this court when this case was submitted to Judge Ezra after Phil Schmidt testified that he was completely 100% certain that he identified Burkhardt on July 17th in a photographic array by putting his initials PS on photograph number five, something we have still to this day never received. After that, this is what the state wrote. Petitioner argues that Schmidt's identification of a photo of Burkhardt as someone else present at the crime scene was somehow kept from the habeas court. That is plainly and undisputably false. The fact that Schmidt had initially identified a photograph of Burkhardt was well known to the petitioner at the time of his criminal trial. Let me ask rhetorically, why would have Anthony Rankin have gone through these contortions in his two confessions to murder waiting in the hallway? Your time is up. If you have something you want to conclude with, go ahead. Judge, I just don't think a judicial estoppel, concept of fairness, concept of ordered liberty demand that that reversal in position be addressed even if it's within the concept of remanding this back to determine how McCoy was impacted by that all right thank you counsel thank both counsel for their helpful arguments the case just argued will be submitted and with that we are adjourned for the day thank you
judges: Wallace, Bea, Bennett